*In re* EVARISTO MALDONADO, querellado.

*Número:* CE-88-701 *Resuelto:* 18 de mayo de 1993

*Norma Cotti Cruz* y *Reina Colón de Rodríguez, Subprocuradoras Generales, Mayra López Mulero, José Roberto Vega Díaz* e *Yvonne Casanova Pelosi, Procuradores Generales Auxiliares,* abogados de El Pueblo; *Efraín Guzmán Mollet,* abogado del querellado; *Evaristo Maldonado Rodríguez, pro se; Arturo Cintrón García* y *Juan Marcano, Comisionados Especiales.*

## I

PER CURIAM: La querella que dio origen al caso de autos surgió a raíz de la sentencia dictada el 21 de agosto de 1987 en el caso civil *José D. Rodríguez Cotto v. José J. Laureano Valentín,* Civil Núm. 83-2723, sobre cobro de dinero que se ventiló ante el Tribunal Superior, Sala de Arecibo.

En dicha sentencia el tribunal determinó, como cuestión de hecho, que las iniciales y las firmas que aparecen en la Escritura Núm. 18 de 24 de marzo de 1982, autorizadas

por el notario Evaristo Maldonado, así como las del otorgante José D. Rodríguez Cotto, no habían sido escritas por éste.

El 31 de agosto de 1987 el tribunal ordenó a su Secretaría remitirnos copia de la sentencia dictada.

En atención a dicha orden y a la sentencia que le acompañaba, mediante Resolución de 25 de septiembre de 1987 referimos el asunto a la Oficina del Procurador General para la correspondiente investigación e informe.

Examinado el informe del Procurador General que nos fuera presentado el 5 de mayo de 1988, mediante resolución emitida el 26 de mayo de 1988 le ordenamos presentar querellas por cada uno de todos los cargos resultantes de la conducta antiética imputada al Lcdo. Evaristo Maldonado.

La querella que nos ocupa fue presentada el 23 de noviembre de 1988 por el Procurador General de Puerto Rico. El 7 de junio de 1989 se presentó una querella enmendada en la cual se alegó que el Lcdo. Evaristo Maldonado, actuando como notario público, incurrió en conducta ilegal e impropia que violentaba la Ley Notarial de Puerto Rico y los Cánones 35 y 38 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX.

Se alegó en la querella enmendada que el licenciado Maldonado, el 24 de marzo de 1982, al autorizar la Escritura Núm. 18 de Compraventa de Propiedad Hipotecada —en la cual comparecieron como vendedores el Sr. José D. Rodríguez Cotto y la Sra. Lydia Arce Salazar, y como compradores el Sr. José J. Laureano Valentín y la Sra. Maritza Marrero Rivera— dio fe de que el Sr. José D. Rodríguez Cotto había suscrito dicha escritura, cuando en realidad no la tuvo ante sí, y permitió, consintió o autorizó que se suplantara su firma; dio fe de que la parte vendedora había recibido a la fecha del otorgamiento la suma de $10,000 como parte de la compraventa, cuando no fue cierto; dio fe de que la Sra. Lydia Arce Salazar había firmado la escritura en su presencia cuando ésta no estuvo ante él; dio fe

en la escritura de que los vendedores estaban casados cuando en realidad estaban divorciados, e hizo constar que la propiedad objeto de la compraventa sólo tenía un gravamen cuando sobre la propiedad existían otros gravámenes.(¹)

El querellado negó todos los cargos imputados, y alegó que el Sr. José D. Rodríguez Cotto estuvo en su oficina al momento de otorgar la escritura y que éste fue quien la firmó el 24 de marzo de 1982. El querellado también negó la imputación de que él no se encontraba ante la Sra. Arce Salazar cuando ésta firmó la escritura en su oficina.

Por otro lado, el licenciado Maldonado aceptó haber hecho constar en la escritura que los vendedores estaban casados cuando en realidad estaban divorciados, y también aceptó haber hecho constar la entrega de $10,000 a los vendedores al momento de otorgar la escritura. El querellado alegó que fue un error involuntario el dar fe de la entrega de $10,000 al momento del otorgamiento de la escritura cuando en realidad lo que le informaron los otorgantes fue que esa cantidad de dinero se había entregado previo al acto del otorgamiento. El querellado alegó, además, que por error involuntario se hizo constar que los vendedores estaban casados cuando en realidad se encontraban divorciados.

El caso fue sometido por el expediente ante el Comisionado Especial Hon. Juan Marcano Ortiz, el 30 de septiembre de 1991, luego de que ambas partes estipularan prácticamente toda la prueba documental, pericial y testifical.(²) El 5 de mayo de 1992 se presentó ante nos el

---

(¹) En el Informe de Conferencia con Antelación a la Vista ante el Comisionado Especial se desistió con perjuicio del cargo en el cual se alegaba que no se habían hecho constar en la Escritura Núm. 18 unos gravámenes registrales sobre el inmueble objeto de la compraventa. De la certificación literal del Registro de la Propiedad surgía únicamente un solo gravamen, el cual se había descrito en la Escritura de Compraventa.

(²) El 31 de enero de 1989 este Tribunal designó al Lcdo. Arturo Cintrón García como Comisionado Especial en este caso. Habiendo tomado conocimiento del fallecimiento del licenciado Cintrón García, este Tribunal, el 5 de junio de 1990, nombró al

informe de 4 de mayo de 1992 suscrito por el Comisionado Especial, que en lo pertinente contiene las siguientes determinaciones de hecho:

1. Que el Lcdo. Evaristo Maldonado otorgó la Escritura [Núm.] 18 del 24 de marzo de 1982, Compraventa Propiedad Hipotecada.

2. Que los comparecientes en la Escritura Núm. 18, José D. Rodríguez Cotto, Lydia Arce Salazar, como vendedores, demandaron en una acción de cobro de dinero a José J. Laureano Valentín y su esposa Maritza Marrero Rivera, en el caso CS-83-2723, Tribunal Superior de Arecibo. La demanda fue radicada el 17 de octubre de 1983 [y] enmendada el 26 de enero de 1984. Como resultado de esta acción los demandantes obtuvieron sentencia a su favor y cobraron la suma de $22,360.96. El monto de la sentencia fue pagado en su totalidad por los demandados José J. Valentín y Maritza Marrero Rivera.

3. Que el Sr. José D. Rodríguez Cotto firmó un documento el 1 de julio de 1982 titulado Solicitud de Revisión Administrativa del Negociado de Contribución Sobre la Propiedad del Departamento de Hacienda de Puerto Rico en el cual aceptó y notificó el cambio de dueño de la propiedad objeto en la Escritura Núm. 18.

4. [Que l]a propiedad objeto de la Escritura Núm. 18 fue entregada por José D. Rodríguez Cotto y Lydia Arce Salazar al Sr. José J. Laureano Valentín a final de mayo de 1982.

5. Que los demandantes en el caso Civil Núm. 83-2723 no incluyeron como demandado en ese caso al L[cdo]. Evaristo Maldonado[; que] los demandantes en aquel caso no t[enían] interés alguno en presentar reclamación civil en su contra y que nunca han impugnado la validez de negocio jurídico de compraventa en la Escritura Núm. 18. De hecho, los señores Rodríguez Cotto y Arce Salazar comparecieron en el Civil Núm. CS-87-2723, a que se confirmara el acto jurídico de la compraventa del bien inmueble.

6. [Que e]l L[cdo.] Evaristo Maldonado Rodríguez fue admitido a la profesión de la abogacía por este Tribunal el 9 de diciembre de 1970 y al ejercicio del notariado el 29 de diciembre de 1970.

7. [Que l]os señores Lydia Arce Salazar y José D. Rodríguez Cotto se divorciaron el 29 de mayo de 1981, pero continuaron viviendo y comportándose como casados.

8. [Que e]l L[cdo.] Evaristo Maldonado nunca había sido objeto de acusación, querella o demanda en donde se le imputara

---

Lcdo. Juan Marcano como Comisionado Especial.

violación alguna a los cánones de ética ni a leyes penales del país.

9. Que el L[cdo.] Evaristo Maldonado goza de buena reputación, lo que afirmarían bajo juramento si hubiesen declarado los señores: Luis Pérez de Jesús, (Ex-secretario del Senado de Puerto Rico); Rogelio Riquelme (Teniente de la Policía de Puerto Rico, retirado); Zaida Rodríguez (Maestra) y Luz Minerva Rodríguez Aponte (Maestra retirada).

10. [Que e]l L[cdo.] Evaristo Maldonado más allá de los honorarios de abogado devengados no se benefició en forma alguna por el negocio jurídico por él realizado al otorgar la Escritura Núm. 18 objeto de esta querella.

11. Que la Escritura Núm. 18 objeto de esta querella está inscrita en el Registro de la Propiedad.

12. Que él en su actuación como [n]otario [p]úblico autorizó la Escritura Núm. 18 sobre Compraventa, el 24 de marzo de 1982, y dio fe de que en su presencia la parte vendedora recibió de la parte compradora ... $10,000.00 [cuando] ese hecho no le constaba ni ocurrió como se dice en la referida escritura.

13. [Que s]e hizo constar que don José D. Rodríguez Cotto y doña Lydia Arce Salazar eran casados entre sí, estando estos divorciados y haber sido el querellado abogado de una de las partes en el trámite de divorcio.

14. Que el notario querellado no tuvo ante sí, al otorgar la Escritura Núm. 18. del 24 de marzo de 1982, al Sr. José D. Rodríguez Cotto, por no ser la firma de éste la que aparece en la referida escritura.

15. Que el querellado no tuvo ante sí a la Sra. Lydia Arce Salazar, cuando otorgó la Escritura Núm. 18 de Compraventa de Propiedad Hipotecada el 24 de marzo de 1982, siendo ésta una otorgante del referido documento.

16. Que examinado el informe del perito Evaristo Álvarez Ghigliotti, debe determinarse que ni el notario querellado, su secretaria Doris Rijos Santiago, ni los otorgantes José J. Laureano y Lydia Arce Salazar, firmaron por José D. Rodríguez Cotto.

17. Que los hechos a que nos hemos referido, dieron base a la radicación del caso *José D. Rodríguez Cotto y Lydia E. Arce Salazar* [v]s. *José Laureano Valentín y Maritza Marrero Rivera*, Civil [Núm.] 83-2723, ante el Tribunal Superior, Sala de Arecibo (Cobro de Dinero). La parte demandante obtuvo sentencia a su favor. (Énfasis suplido.) Informe, págs. 8–10.

Inconforme con estas determinaciones, el querellado en dos ocasiones presentó unas mociones en las que solicitó la reconsideración y que se enmendaran las determinaciones

de los hechos. También solicitó la celebración de una vista para discutir los planteamientos presentados. El Comisionado Especial declaró no ha lugar ambas mociones.

El 10 de diciembre de 1992, el querellado solicitó a este Tribunal que revisara varias de las determinaciones de hecho del informe del Comisionado Especial.

## II

El querellado solicita que este Tribunal enmiende las determinaciones de hecho Núms. 12–17 del Informe del Comisionado Especial, identificadas antes.

Dado que toda la prueba en autos fue estipulada y que el Comisionado no recibió prueba oral alguna, este Tribunal se encuentra, en cuanto al análisis de la prueba se refiere, en la misma situación que el Comisionado Especial. Hemos resuelto consistentemente que este Tribunal está en la misma posición que el tribunal de instancia en cuanto al testimonio pericial, quedando por lo tanto "en libertad de adoptar nuestro propio criterio". *Zambrana v. Hospital Santo Asilo de Damas*, 109 D.P.R. 517, 522 (1980). Lo mismo ocurre en cuanto a la evidencia documental. *Pueblo v. Pagán Díaz*, 111 D.P.R. 608, 618 (1981).

En *Planned Credit of P.R., Inc. v. Page*, 103 D.P R. 245, 260–261 (1975), resolvimos:

> No menoscabamos la regla de respeto a las determinaciones de hecho de los tribunales de instancia cuando evaluamos prueba documental, pues sobre ésta ocupamos igual posición que la de los foros primarios .... Véase, además, *Ortiz v. Cruz Pabón*, 103 D.P.R. 939, 947–948 (1975), y casos allí citados.

Examinada la prueba en autos, encontramos que procede enmendar las determinaciones de hecho Núms. 14 y 17, pero no así las Núms. 12, 13 y 15.[3]

---

[3] Tampoco procede enmendar la determinación de hecho Núm. 16, ya que no surge del expediente ninguna base para alterarla. Por otro lado, dicha determinación

*Determinación de hecho Núm. 14*

En cuanto a la determinación de hecho Núm. 14, el querellado solicitó que se enmiende para que se señale que la firma que aparece en la Escritura Núm. 18 como la de José D. Rodríguez Cotto fue en efecto escrita por éste.

De la prueba que obra en autos surge que el licenciado Maldonado declaró que conocía personalmente a los ótorgantes con anterioridad al acto del otorgamiento de la escritura en cuestión y que éstos comparecieron a dicho acto ante él. Por su parte, el Sr. José D. Rodríguez Cotto declaró que no había comparecido a dicho acto y negó que hubiera firmado la escritura aquí en controversia.

Aparte del testimonio del propio señor Rodríguez Cotto y el de su esposa, no existe prueba en el expediente que sustente que la firma que aparece como del señor Rodríguez Cotto no fuera efectivamente escrita por él.

Según surge del informe del Sr. Evaristo Álvarez Ghigliotti (perito de la parte querellante), del informe del Sr. Charles Hamilton (perito de la parte querellada) y de la Determinación Núm. 16 que hiciera el Comisionado Especial, la firma que aparece como del Sr. José D. Rodríguez Cotto no fue hecha por la Sra. Doris Rijo, por los otorgantes José J. Laureano y Lydia Arce Salazar, ni por el querellado Evaristo Maldonado. Estas personas fueron las únicas presentes en la oficina durante el acto del otorgamiento de la escritura.

Por otro lado, en el informe realizado por el perito Charles Hamilton se concluye que en efecto la firma impugnada en la escritura es la del señor Rodríguez Cotto; además, se determina que la firma que le sigue a la del señor Rodríguez Cotto es la de la Sra. Lydia Arce Salazar y que esta firma fue hecha con posterioridad a la del señor

---

apoya la enmienda que realizáramos a la determinación de hecho Núm. 14 a los efectos de que la firma aquí en controversia fue escrita por el Sr. José D. Rodríguez Cotto.

Rodríguez Cotto, dado que la firma de la señora Arce Salazar pasa por encima de la del señor Rodríguez Cotto.[4] Esta prueba fue estipulada y no controvertida. Concluimos que procede enmendar la determinación de hecho Núm. 14 a los efectos de señalar que la firma que aparece en la escritura como la del Sr. José D. Rodríguez Cotto fue en efecto hecha por él.

### Determinación de hecho Núm. 17

El querellado también solicitó la reconsideración de la determinación de hecho Núm. 17 para hacer constar que los hechos expuestos en la querella de autos no motivaron la presentación del Caso Civil Núm. 83-2723 *José D. Rodríguez Cotto, etc. v. José Laureano Valentín.*

Lo que en efecto dio base a tal reclamación fue la falta de pago de los compradores del precio convenido en la compraventa. Así consta claramente en la demanda, la sentencia y otros documentos de esta. Por ende, procede que se elimine la determinación de hecho Núm. 17.

### Determinaciones de hecho Núms. 12 y 13

El querellado solicitó la reconsideración de la determinación de hecho Núm. 12 en vista de que según el testimonio estipulado del licenciado Maldonado, los otorgantes de la escritura le informaron que previo a su otorgamiento los compradores habían entregado $10,000 a los vendedores. Se estipuló que el licenciado Maldonado declaró que por error involuntario se hizo constar en la escritura que la parte vendedora recibió de los compradores $10,000 en el

---

[4] Surge de la prueba en autos que el señor Charles Hamilton fue el único perito que estudió el punto de si la firma de la señora Arce se sobrepuso a la firma del señor Rodríguez Cotto. La conclusión del señor Hamilton en su informe es que en efecto así ocurrió. Del informe del Sr. Evaristo Álvarez Ghigliotti surge que tal punto no fue estudiado. De igual forma, del informe del Sr. Héctor Maldonado surge que él no pudo hacer ninguna determinación en cuanto a los puntos en controversia que le fueron sometidos a su consideración. En ese sentido, la prueba presentada por el querellado debió haber merecido entero crédito en vista de que no fue controvertida. Véase *Villaronga, Com. v. Tribl. de Distrito,* 74 D.P.R. 331 (1953).

acto de otorgamiento de la escritura, cuando debió hacerse constar que se le había informado al notario que los $10,000 se habían entregado antes de otorgar el documento.

En cuanto a la determinación de hecho Núm. 13, el querellado alega que procede la enmienda de ésta en virtud de que la prueba en autos, estipulada por las partes, establece que a pesar de que los otorgantes José D. Rodríguez Cotto y Lydia Arce Salazar estaban divorciados a la fecha del otorgamiento de la escritura, éstos se comportaban como si estuviesen casados. El querellado alega que fue un error involuntario el haber incluido en la escritura como casados a los otorgantes antes mencionados y que dicho error en la identificación de la relación marital entre los otorgantes no afectó el negocio jurídico ni sus derechos.

█ El Lcdo. Evaristo Maldonado incurrió en conducta impropia al otorgar una escritura y dar fe pública en dicho documento de que los otorgantes estaban casados entre sí, cuando le constaba o debió constarle que estaban divorciados puesto que él había sido abogado de una de las partes durante el trámite de divorcio.

█ De igual manera, el querellado, actuando como notario público, incurrió en conducta impropia al otorgar la escritura en cuestión y dar fe pública de que ante él la parte vendedora había recibido $10,000 de manos de la parte compradora cuando le constaba, por información de los propios otorgantes, que dicho hecho no era cierto.

La conducta del Lcdo. Evaristo Maldonado constituye una violación de la fe pública notarial y del deber de honradez y sinceridad contenido en el Canon 35 del Código de Ética Profesional, *supra*, por lo que merece ser sancionada.[5]

---

[5] *"Canon 35. Sinceridad y honradez*

"La conducta de cualquier miembro de la profesión legal ante los tribunales, para con sus representados y en las relaciones con sus compañeros debe ser sincera y honrada.

*Determinación de hecho Núm. 15*

También se solicitó la reconsideración y enmienda de la determinación de hecho Núm. 15 a base de que la prueba en autos había establecido que la Sra. Lydia Arce Salazar, al momento de suscribir la Escritura Núm. 18, estuvo en la oficina del Lcdo. Evaristo Maldonado y suscribió e inició el documento ante la presencia de éste.

La Sra. Lydia Arce Salazar declaró que ciertamente ella había firmado la escritura en cuestión, en la oficina del licenciado Maldonado y ante la secretaria de éste, pero que el querellado no se encontraba presente en aquel momento. Señaló, además, que cuando firmó la escritura no aparecía la firma con el nombre de su esposo, como aparece en dicho documento.

En cuanto a la determinación de hecho Núm. 15, estimamos que no merece ser modificada. Si bien tanto el licenciado Maldonado como su secretaria declararon que el querellado se encontraba en su oficina durante el tiempo en el cual la Sra. Lydia Arce Salazar firmaba la escritura, no existe prueba que refute la declaración de ésta a los efectos de que ella no estuvo ante el licenciado Maldonado al momento de la firma.[6]

 El Lcdo. Evaristo Maldonado incurrió en conducta impropia al no cumplir con las disposiciones de la ley notarial en cuanto al requisito de comparecencia de los

---

"No es sincero ni honrado el utilizar medios que sean inconsistentes con la verdad ni se debe inducir al juzgador a error utilizando artificios o una falsa relación de los hechos o del derecho. Es impropio variar o distorsionar las citas jurídicas, suprimir parte de ellas para transmitir una idea contraria a la que el verdadero contexto establece u ocultar alguna que le es conocida.

"El abogado debe ajustarse a la sinceridad de los hechos al examinar los testigos, al redactar afidávit u otros documentos, y al presentar causas. El destruir evidencia documental o facilitar la desaparición de evidencia testifical en un caso es también altamente reprochable." 4 L.P.R.A. Ap. IX.

[6] Según se indica en el informe de conferencia con antelación a la vista, que fuera estipulado por las partes, la Sra. Doris Rijos, secretaria del querellado, declaró que la Sra. Lydia Arce había comparecido a la oficina y que, luego de leer el documento, lo había firmado ante ella. No se especificó que el querellado estaba presente; sólo se aclaró que éste estaba en su oficina.

otorgantes de un documento público. Como señaláramos en *In re González González*, 119 D.P.R. 496, 499 (1987), "[l]a fe pública notarial, como elemento objetivo que se concretiza a través de la persona del notario con la presencia del compareciente, es la espina dorsal de todo el esquema de autenticidad documental. Cuando se quiebra[,] todo el sistema se afecta".

La conducta del Lcdo. Evaristo Maldonado constituye una seria violación a la fe pública y a la función notarial que este Tribunal se ha comprometido a guardar, por lo que merece ser sancionada. *In re Tirado Saltares*, 118 D.P.R. 576 (1987); *In re Pedraza González*, 118 D.P.R. 87 (1986); *In re Aponte Arché*, 117 D.P.R. 837 (1986); *In re De Jesús Fuentes*, 117 D.P.R. 90 (1986); *In re Todd Arias*, 117 D.P.R. 10 (1986); *In re Rivera Lassen,* 116 D.P.R. 325 (1985); *In re Colón de Zengotita*, 116 D.P.R. 303 (1985).

Por las razones expuestas y examinados los cargos formulados contra el Lcdo. Evaristo Maldonado, así como la prueba presentada, *se disciplina al notario querellado ordenándose su separación del ejercicio de la notaría por el término de un (1) año.*

*Se dictará sentencia de conformidad.*

El Juez Asociado Señor Negrón García disintió, por estimar que la sanción impuesta no guarda proporción con la gravedad de los cargos probados y las violaciones que ello representa en cuanto a la esencia de la buena práctica de la notaría. El Juez Asociado Señor Rebollo López no intervino.