per curiam:
Corresponde expresarnos, nuevamente, sobre el ineludible deber del abogado de cumplir con las órdenes que se dictan durante los procedimientos disciplinarios instados en su contra. Al igual que en otros casos, el incumplimiento del abogado querellado da lugar a su suspensión indefinida.
I
El Ledo. José A. García Ortiz fue admitido al ejercicio de la abogacía el 1 de noviembre de 1978 y a la notaría el 8 de diciembre de 1978. En su desempeño como abogado, el querellado fue contratado verbalmente por la Sra. Melba I. Tirado Girona y el Sr. Herminio Serrano para que presentara una causa de acción sobre daños y perjuicios relacionada con una querella presentada por los querellantes ante el Departamento de Asuntos del Consumidor (D.A.Co.). Estos últimos pagaron al querellado $1,500 para que procediera con el trámite contencioso. Luego de un tiempo, la Sra. Melba I. Tirado Girona y el Sr. Herminio Serrano acudieron a la oficina del querellado para conocer el estado de los procedimientos, pero la oficina estaba cerrada y no pudieron comunicarse con el querellado. Ante esta situación, la Sra. Melba I. Tirado Girona y el Sr. Herminio Serrano presentaron la queja que dio lugar a la querella objeto de este recurso, en la que señalaron que el querellado cobró honorarios sin realizar la gestión para la que fue contratado. Además, adujeron que no pudieron comunicarse con el querellado sobre ese particular. El abogado compareció y contestó la queja instada en su contra.
A raíz de estos hechos y luego de realizar la correspondiente investigación, el Procurador General presentó una querella en la que señaló que el Ledo. José A. García Ortiz incurrió en una violación a los Cánones 24 y 19 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX. El 25 de marzo de 2008 este Tribunal emitió un mandamiento en el que or *125 denó al licenciado García Ortiz que contestara la querella instada en su contra. El querellado no contestó la referida querella. Luego, el 6 de mayo de 2008, emitimos otra resolución en la que le concedimos un término de diez días adicionales para que el querellado contestara la querella, apercibiéndole que de no hacerlo se continuaría el procedimiento disciplinario sin su comparecencia. El querellado tampoco compareció.
Ante la incomparecencia del querellado, nombramos un Comisionado Especial para que continuara con el procedimiento disciplinario. El 15 de julio de 2008, el Comisionado Especial, cumpliendo con el mandato de este Tribunal, ordenó al querellado que contestara la querella instada en su contra. El querellado no presentó su contestación y el Procurador General sometió la querella por el expediente. De acuerdo con los señalamientos hechos bajo juramento por la Sra. Melba I. Tirado en la queja presentada contra el querellado y los tres recibos del pago de honorarios que obran en el expediente, el Comisionado Especial sometió un informe en el que hizo las correspondientes determinaciones de hechos probados y conclusiones de derecho.
Según surge de ese informe, la señora Tirado Girona y el señor Serrano pagaron $1,500 al querellado para que los representara en una causa de acción sobre daños y perjuicios. El querellado se limitó a hacer unas visitas y revisar el expediente de la querella presentada en D.A.Co. por la señora Tirado Girona y el señor Serrano. El querellado no suscribió un acuerdo escrito sobre el pago de honorarios. Por último, el querellado no mantuvo informados a sus clientes sobre el trámite para el que fue contratado.
Por lo anterior, el Comisionado Especial concluyó que el querellado violó las disposiciones del Canon 24 del Código de Etica Profesional, supra, por no suscribir un contrato escrito sobre el pago de honorarios de abogado y no justificar la cuantía cobrada, ya que no realizó la gestión para la *126 que fue contratado, esto es, la presentación de una demanda sobre daños y perjuicios. Además, el Comisionado Especial determinó que el querellado infringió el Canon 19 del Código de Ética Profesional, supra, al no mantener informados a sus clientes sobre el trámite para el que fue contratado. Entre otras cosas, el Comisionado Especial concluyó que procedía la suspensión del querellado del ejercicio de la abogacía por incumplir reiteradamente con sus órdenes y las de este Tribunal, conforme dispone la doctrina al efecto.
Luego de esto, el querellado presentó una moción informativa en la que solicitó la desestimación de la querella. Señaló que sufría de una parálisis corporal y de una condición cardíaca que le impidió cumplir con las órdenes emitidas. Adujo, además, que la Sra. Zaida Oliveras era la encargada de buscarle la correspondencia en el apartado de correos y que ésta no le entregó la notificación que emitió el Comisionado Especial para que contestara la querella por miedo a que le afectara su condición física y emocional. Alegó que fue por esta situación que no pudo cumplir con las órdenes que se emitieron.
El 28 de octubre de 2008 el Comisionado Especial concedió al letrado diez días para que sometiera evidencia sobre su estado de salud y sobre la manera en que manejaba su correspondencia, para así evaluar si sus alegaciones justificaban el incumplimiento con las órdenes emitidas. Luego, el 20 de noviembre de 2008 el Comisionado Especial ordenó al querellado que notificara al Procurador General la referida moción informativa. El querellado incumplió ambas órdenes.
Ante esta situación, el Comisionado Especial emitió una orden en la que declaró “no ha lugar” la moción informativa presentada por el querellado en la que justificó su incumplimiento con las órdenes emitidas. En dicha orden, el Comisionado Especial refirió el informe ante este Tribunal, en el que concluyó que procedía la suspensión indefinida *127 del querellado del ejercicio de la abogacía por incumplir reiteradamente con sus órdenes y las de este Tribunal.
Mientras atendíamos la querella presentada en la que se le imputó violaciones a los Cánones 24 y 19 del Código de Etica Profesional, supra, el 9 de diciembre de 2008 el Procurador General presentó otra querella por hechos distintos a los imputados en la querella anterior. En esta ocasión el Sr. José Cuevas Vega contrató los servicios del querellado para que lo representara en una acción sobre daños y perjuicios contra la Autoridad de Acueductos y Alcantarillados (A.A.A.). Alegadamente, la parte demandada en ese pleito emitió un cheque por $15,000 a favor del querellante Cuevas Vega. Supuestamente, el abogado querellado le entregó un cheque por $10,000 a su cliente y le indicó que esa era la cantidad obtenida por la demanda. El querellante le indicó al licenciado García Ortiz que no podía cambiar el cheque, porque estaba suscrito sólo con su nombre, sin los apellidos. El querellado le dijo que se lo llevaría para hacer la corrección y que luego se lo devolvería, pero, alegadamente, no regresó a entregar el cheque en cuestión. El querellante trató de localizarlo, pero el Ledo. José A. García Ortiz nunca apareció. El querellante acudió al Cuartel de la Policía de Arecibo para reportar estos hechos. Luego de varios incidentes, se presentó ante el Tribunal de Primera Instancia, Sala de Arecibo, unas denuncias contra el querellado por el delito de apropiación ilegal agravada y posesión y traspaso de documentos falsificados. En esa misma fecha el tribunal determinó causa probable contra el querellado, y en la vista preliminar para arresto el querellado compareció y entregó los $10,000 al querellante. Por estos hechos, el Procurador General presentó la segunda querella contra el Ledo. José A. García Ortiz. Concedimos un término al querellado para que contestara la referida querella, pero éste no lo hizo.
Contamos con la comparecencia del Procurador General. Se dio oportunidad al querellado para contestar *128 las querellas instadas en su contra. No lo hizo. Por lo tanto, procedemos a ejercer nuestra facultad disciplinaria.
II
El Canon 19 del Código de Ética Profesional, supra, impone al abogado el deber de mantener a su cliente siempre informado sobre todo asunto que suija en el desarrollo del caso que le ha sido encomendado. In re Álvarez Aponte, 158 D.P.R. 140 (2002); In re Cardona Vázquez, 108 D.P.R. 6 (1978). Esto significa que el abogado está obligado a informar a los clientes sobre las gestiones realizadas para la tramitación de la causa de acción para la cual fue contratado. En este caso, el querellado no cumplió con su deber de informar a sus clientes sobre las gestiones para las que fue contratado. Peor aún, los querellantes visitaron su oficina, trataron de localizarlo por carta y no lo pudieron conseguir. Este cuadro fáctico presenta una falta de diligencia en informar que, a su vez, genera una clara violación al Canon 19, supra.
Por otra parte, el Canon 24 del Código de Ética Profesional, supra, señala los aspectos que se consideran al momento de fijar los honorarios de los abogados. Entre éstos se encuentran la naturaleza de la gestión, la novedad y dificultad del asunto a resolver, la habilidad y el conocimiento necesarios para conducir el caso adecuadamente, el tiempo y trabajo requeridos, los honorarios que se acostumbran a cobrar por servicios similares, la cuantía involucrada, la contingencia o certeza de la compensación, y la naturaleza de la gestión profesional, entre otros. In re Ayala Oquendo, 166 D.P.R. 587 (2005). Como bien hemos señalado, al iniciar su gestión profesional, todo abogado debe tomar en consideración lo que el referido canon dis-pone, a los efectos de que es deseable que se llegue a un acuerdo sobre los honorarios que cobrará al inicio de la *129 relación profesional y que dicho acuerdo sea reducido a escrito para evitar que se susciten malentendidos entre el cliente y él. In re Rodríguez Mercado, 165 D.P.R. 630 (2005).
Según mencionamos anteriormente, el Comisionado Especial concluyó que el querellado violó las disposiciones del Canon 19 y 24 del Código de Ética Profesional, supra. Esta conclusión se basó en los señalamientos hechos bajo juramento por la Sra. Melba I. Tirado en la queja presentada contra el querellado y los tres recibos del pago de honorarios que sostienen dichas declaraciones. La prueba que tuvo ante sí el Comisionado Especial es documental, por lo que este Tribunal está en igual posición que el Comisionado para evaluarla. In re Maldonado, 133 D.P.R. 346, 352 (1993). Entendemos que los hechos de este caso están sustentados por la prueba documental ante nuestra consideración, a saber, la declaración jurada hecha por la quejosa, los recibos de pago que sustentan los señalamientos vertidos en dicha declaración y las alegaciones contradictorias vertidas por el querellado en su contestación a la queja.
Conforme con esta prueba, entendemos que en este caso el letrado debió suscribir un acuerdo escrito para que no surgieran discrepancias sobre la cuantía o sobre la naturaleza de la gestión para la que fue contratado. Además, entendemos que el querellado cobró honorarios de abogado en exceso y, en consecuencia, infringió el referido canon. La única gestión que realizó el querellado fue visitar las oficinas de D.A.Co. para revisar el expediente de la querella presentada por la señora Tirado Girona y el señor Serrano, aunque éstos le habían entregado copia del referido expediente.
Consideramos, basados en lo antes expuesto y en la prueba documental que obra en el expediente, que el Ledo. José A. García Ortiz faltó a los deberes impuestos por los Cánones 19 y 24 del Código de Ética Profesional, supra.
*130 III
Por último, según hemos enfatizado reiteradamente, todo abogado tiene la obligación ineludible de responder diligentemente a los requerimientos de este Tribunal, particularmente cuando se trata de procedimientos sobre su conducta profesional. In re Soto Colón, 155 D.P.R. 623, 649 (2001); In re Ríos Acosta I, 143 D.P.R. 128 (1997). Conforme con lo anterior, hemos resuelto que procede la suspensión del ejercicio de la abogacía cuando un abogado no atiende con diligencia nuestros requerimientos y se muestra indiferente ante los apercibimientos de sanciones disciplinarias. In re Giráldez Iñesta, 173 D.P.R. Ap. (2008); In re Lloréns Sar, 170 D.P.R. 198 (2007); In re Pereira Esteves, 116 D.P.R. 791, 792 (1985).
En este caso, el querellado incurrió en serias conductas antiéticas. Por un lado, el querellado infringió el Canon 24 del Código de Etica Profesional, supra, al desatender todos los requerimientos que le hizo tanto el Comisionado Especial como este Tribunal. Este Tribunal le requirió en dos ocasiones al querellado que contestara la primera querella instada en su contra. Este no contestó. Así también, el Comisionado Especial envió una orden, requiriendo nuevamente que el querellado presentara su contestación a la primera querella. El querellado tampoco contestó. Conforme con lo anterior, durante el procedimiento disciplinario objeto de este recurso se dieron varias oportunidades al querellado para que compareciera y éste no lo hizo.
Más aún, luego de que el Comisionado Especial hizo su informe, el querellado presentó una moción informativa alegando que no pudo comparecer por varias razones, entre éstas, su estado de salud. Ante esta situación, el Comisionado Especial le dio un término adicional para que el querellado presentara evidencia fehaciente que justificara su incumplimiento. El querellado nunca presentó esa evidencia ni moción alguna a los efectos de dar razones para *131 justificar su incumplimiento. El Comisionado Especial ordenó al querellado que notificara la moción informativa al Procurador General, pero el querellado tampoco cumplió con esta orden. Como agravante de esta situación, el querellado continúa en craso incumplimiento con los dictámenes de este Tribunal al no haber contestado la segunda querella que se presentó en su contra.
Conforme con lo anterior, el querellado incumplió de forma reiterada con su deber de responder oportunamente a los requerimientos de este Tribunal y del Comisionado Especial. A pesar de las oportunidades concedidas, éste se ha mostrado indiferente ante nuestras órdenes y ha hecho caso omiso de ellas. Incluso, se ha mostrado renuente a cumplir con nuestros requerimientos a pesar de habérsele advertido que se continuaría el procedimiento en su contra sin el beneficio de su comparecencia.
En atención a todo lo anterior y a base del trato que en el pasado le hemos dado a situaciones como ésta, se suspende indefinidamente del ejercicio de la abogacía y la notaría al Ledo. José A. García Ortiz.
Se impone al Ledo. José A. García Ortiz el deber de notificar a todos sus clientes de su inhabilidad para seguir representándolos, devolverles cualesquiera honorarios recibidos por trabajos no realizados e informar oportunamente de su suspensión a los distintos foros judiciales y administrativos, si tiene algún asunto pendiente en éstos. Además, deberá certificarnos dentro del término de treinta días a partir de la notificación de esta opinión per curiam y Sentencia, el cumplimiento de estos deberes.
El Alguacil de este Tribunal deberá incautarse de la obra y el sello notarial del abogado suspendido y entregarlos a la Directora de la Oficina de Inspección de Notarías para que realice la correspondiente investigación e informe.

Se dictará Sentencia de conformidad.

*132 La Jueza Asociada Señora Fiol Matta concurrió con la decisión de la mayoría de suspender al Sr. José A. García Ortiz del ejercicio de la abogacía y la notaría, debido a su incomparecencia y desatención a las órdenes de este Tribunal. Sin embargo, disintió de la conclusión mayoritaria de encontrar al señor García Ortiz incurso en violaciones a los Cánones 19 y 23 del Código de Etica Profesional, 4 L.P.R.A. Ap. IX. Señaló la Jueza Asociada Señora Fiol Matta que el Procurador General sometió el caso por el expediente y de éste no surge, como tampoco del Informe del Comisionado Especial, la prueba clara, robusta y convincente necesaria para encontrar al abogado incurso en violación a dichos cánones. Concluyó que de la queja juramentada sólo podemos derivar las alegaciones de la quejosa, quien no testificó y cuya credibilidad no pudo ser apreciada por el Comisionado Especial. Asimismo, indicó que los tres recibos del pago de honorarios no subsanan la ausencia de prueba robusta y convincente, y en esas circunstancias, las determinaciones de hechos del Comisionado no ameritan deferencia. Véase In re Irizarry Pérez II, 173 D.P.R. 282, 284-285 (2008): “Puesto que el Comisionado Especial no recibió prueba oral alguna ... este Tribunal se encuentra en igual posición para aquilatar [la evidencia documental].”
La Juez Asociada Señora Rodríguez Rodríguez se une a las expresiones de la Jueza Asociada Señora Fiol Matta.